UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ESTELLE STAMM,

                                  Plaintiff,

            -against-                       **MEMORANDUM AND ORDER**

NEW YORK CITY TRANSIT AUTHORITY (TA),        04-CV-2163 (SLT) (JMA)
and MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY (MABSTOA),

                                  Defendants.
-----------------------------------------------------------------x
**TOWNES, United States District Judge:**

        In late 2004, plaintiff Estelle Stamm ("Plaintiff") commenced this action pursuant to Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and New York State and New York City laws, alleging that the New York City Transit Authority ("NYCTA") and the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA") (collectively, "Defendants") have failed to ensure that their vehicles and facilities are accessible to her and other persons with disabilities who utilize service animals. Defendants subsequently moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing, *inter alia*, that Plaintiff (1) is not disabled, (2) is not entitled to use a "service animal," (3) is seeking to bring dogs which do not qualify as "service animals" onto Defendants' vehicles; (4) has not made out a Title II claim and (5) cannot make out a claim for intentional infliction of emotional distress.

        In a Memorandum and Order dated March 30, 2011 (the "Prior M&O"), this Court denied Defendants' motion, except in two respects. First, the Court granted summary judgment with respect to that portion of the eleventh cause of action which alleged intentional infliction of emotional distress. Second, the Court reserved decision with respect to that portion of

Defendants' motion which argued that Plaintiff's Title II claim for compensatory damages must fail because Plaintiff neither alleged nor established intentional discrimination on the part of the NYCTA. The Court directed the parties to submit supplemental briefing "on the question of what showing Plaintiff must make in order to collect money damages under Title II of the ADA and whether Plaintiff can make that showing upon the evidence adduced." *Stamm v. New York City Transit Auth.*, No. 04-CV-2163 (SLT)(JMA), 2011 WL 1315935, at *34 (E.D.N.Y. Mar. 30, 2011). In addition, the Court invited Defendants to expand upon certain arguments relating to Plaintiff's retaliation claim and to the question of whether some of Plaintiff's ADA, Rehabilitation Act, and state and local claims are time-barred. *Id.*

## *I. Money Damages under Title II*

The parties have now submitted supplemental briefing. With respect to the question of what showing Plaintiff must make in order to collect money damages under Title II of the ADA, Defendants concede that the NYCTA is not an arm of the State of New York and that Plaintiff need only show "deliberate indifference," rather than "personal animosity or ill will," in order to establish intentional discrimination and recover compensatory damages from Defendants under Title II. Defendants' Supplemental Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Memo") at 6-7. However, Defendants argue (1) that Plaintiff has not adduced evidence of "deliberate indifference," and (2) that compensatory damages should not include damages for emotional distress.

### *A. Deliberate Indifference*

Defendants' first argument relies largely on *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009), a case brought under the Rehabilitation Act and New York law by a deaf woman on behalf of her deceased, deaf husband, Robert, alleging that hospital in which her

husband had heart surgery repeatedly failed to provide a sign language interpreter. In that case, the Second Circuit held that monetary damages were available under the Rehabilitation Act "only upon a showing of an *intentional* violation" of the Act, and that "[t]he standard for intentional violations is 'deliberate indifference to the strong likelihood [of] a violation.'" *Id.* at 275 (emphasis and brackets in original). The Second Circuit noted that it had yet to define "deliberate indifference" in the context of the Rehabilitation Act, but proceeded to discuss definitions which had been used in other contexts.

First, the Second Circuit found it "at least instructive" to consider the "requirements of deliberate indifference" in the context of "sexual harassment claims under Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§1681 *et seq.*" *Loeffler*, 582 F.3d at 275-76. The Court of Appeals noted that, in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), the Supreme Court held that deliberate indifference under Title IX requires "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf[,] has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Loeffler*, 582 F.3d at 276 (quoting *Gebser*, 524 U.S. at 290). The Second Circuit also noted that, in another context, it had "said that deliberate indifference must be a 'deliberate choice .[. .] rather than negligence or bureaucratic inaction.'" *Id.* (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)) (bracketed material added).

After reviewing the evidence adduced by the plaintiffs in *Loeffler*, the Second Circuit held that the district court had erred in concluding "no reasonable jury could find that the Hospital acted with deliberate indifference." *Id.* The Second Circuit noted that there was evidence that the Loefflers made "at least four separate attempts to secure an interpreter in the

days and weeks" prior to Robert's surgery, "continual requests" for an interpreter in the two weeks following the surgery, and "several requests for a TTY device" – all of which were "unheeded." *Id.* The Second Circuit further noted that the deaf couple's minor son, Bobby, who had been brought into the Recovery Room to interpret for his father just after the surgery, testified that the surgeon, Dr. Sithian, had "laughed off" Bobby's requests for an interpreter. *Id.* The Second Circuit concluded:

> [A] reasonable jury could conclude that persons at the Hospital had actual knowledge of discrimination against the Loefflers, had authority to correct the discrimination, and failed to respond adequately. The Hospital may have had a general policy of providing interpreters, but Antoinette Henderson [a patient representative at the Hospital] was unaware of any practice of scheduling an interpreter in advance, and her conduct may amount to indifference in the face of knowledge of Robert's need for an interpreter. Perhaps most indicative, there is evidence that Dr. Sithian – arguably a policymaker – dismissed Bobby's demand for an interpreter, "just kind of laughed it off, and played it as a joke." This evidence, taken together, would allow a jury to find deliberate indifference.
>
> There are certainly facts in the record that might lead a reasonable jury to conclude that the Hospital was not deliberately indifferent. As the district court explained, the Hospital did have a policy in place to provide interpreters, and Antoinette Henderson . . . made some efforts on the afternoon of October 27, 1995 to find an interpreter, and the law does not require her to have succeeded. But the testimony of the Loefflers and other family members, together with the obvious shortcomings in the policy and the Hospital's conduct, as well as the alleged apathetic response of Dr. Sithian, notwithstanding his authority to correct the discrimination, could lead a reasonable jury to conclude that the Hospital was deliberately indifferent; and its indifference to the Loefflers' rights may have been so pervasive as to amount to a choice.

*Id.* at 276-77 (bracketed material and elipses added).

In arguing that Plaintiff has not adduced evidence of deliberate indifference in this case, Defendants read *Loeffler* too narrowly. According to Defendants:

4

> [T]he Second Circuit appears to have adopted the principle that such "deliberate indifference must be a deliberate choice ... rather than negligence or bureaucratic inaction." *Id.*, 582 F.3d at 276 (internal quotation marks omitted). Thus, for instance, the lack of success in a policymaker's attempt to provide adequate services for a disabled person is not, per se, evidence of deliberate indifference. *Id.*, at 277 (that hospital had "a policy in place to provide interpreters, and [a policymaker] made some efforts [albeit unsuccessful ones]... to find an interpreter" would suggest the hospital "was not deliberately indifferent" because "the law does not require [the policymaker] to have succeeded [in providing appropriate services, in this case the services of an interpreter, to deal with a hearing-impaired patient]). In contrast, evidence that a hospital policymaker was aware of the request for needed services for a disabled person but treated the request for such services "as a joke" or with an "apathetic response ... notwithstanding his authority to correct the discrimination," would be evidence of deliberate indifference on the part of the hospital. *Id.*

Defendants' Memo at 6-7. Defendants argue that because Plaintiff was never actually denied a ride on NYCTA vehicles and because NYCTA policymakers never "treated Ms. Stamm's alleged problems with ... bus operators and subway conductors ... 'as a joke' or in an 'apathetic' way," Plaintiff has not made out "deliberate indifference." *Id.* at 7-8.

In reading *Loeffler* as focusing on whether a defendant treated a plaintiff's complaints "as a joke" or in an "apathetic" way, Defendants advocate for a "deliberate indifference" standard that resembles the "discriminatory animus or ill will" standard applicable to Title II cases involving State defendants. In fact, the *Loeffler* Court applied the *Gebser* requirements in reaching its conclusion. Under *Gebser*, deliberate indifference requires "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf[,] has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Loeffler*, 582 F.3d at 276 (quoting *Gebser*, 524 U.S. at 290). The decision in *Loeffler* tracks the language of *Gebser*, holding that Staten Island University

Hospital was not entitled to summary judgment because a reasonable jury could conclude "that persons at the Hospital had actual knowledge of discrimination against the Loefflers, had authority to correct the discrimination, and failed to respond adequately." *Id.*

Applying the *Gebser* requirements to this case, this Court concludes that a reasonable jury could find the evidence adduced by Plaintiff sufficient to establish deliberate indifference. As detailed in the Prior M&O, Defendants suspended the policy of requiring identification for service animals in early 1999, after the NYCTA's President received a letter from the Office of Civil Rights opining that the policy was "not consistent with the intention of the ADA Statute or the DOT ADA implementing regulations and the guidance provided by the Department of Justice." *Stamm*, 2011 WL 1315935, at *7. Defendants subsequently made efforts to inform their employees of the policy changes through, *inter alia*, various manuals and pamphlets. *See id.* at *7-*9. However, those efforts were not entirely effective, as evidenced by the fact that even veteran bus drivers and highly placed personnel, such as Harry Caddell, a General Superintendent in charge of bus drivers, and Carl Bonsignore, a Superintendent of Transportation, could not recall having been informed of the policy changes. *Id.* at *9.

Plaintiff maintains that, as a result of the failure to adequately communicate the change in policy, she was involved in numerous incidents in which Defendants' employees were either ignorant of the change in policy or confused about which policy to apply. Several high-ranking NYCTA officials were well aware of the incidents, since Plaintiff complained to Millard Seay, a Senior Vice President in the Department of Buses; Steve Nacco, then the head of Defendants' Bus Customer Service Division; personnel at the Bus Command Center ("Console") and others on a regular basis. There is nothing to suggest that these officials treated Plaintiff's complaints "as a joke" or were in any way "apathetic." However, construing this evidence in a light most

favorable to Plaintiff, a jury could reasonably conclude that at least one NYCTA official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately. Accordingly, a reasonable jury could find the evidence adduced by Plaintiff sufficient to establish deliberate indifference. *See Gebser*, 524 U.S. at 290; *Loeffler*, 582 F.3d at 276. Defendants' motion for summary judgment on Plaintiff's Title II claim is, therefore, denied.

### B. *Emotional Distress*

Defendants' second argument is that, even if Plaintiff can recover compensatory damages for violations of Title II, the compensatory damages should not include damages for emotional distress. Defendants do not cite to any Second Circuit caselaw that directly supports this proposition. Rather, Defendants' argument is based on the rationale set forth in *Barnes v. Gorman*, 536 U.S. 181 (2002), a case which addressed the availability of punitive damages in private suits brought under the ADA and the Rehabilitation Act.

*Barnes* involved an action pursuant to Title II of the ADA and section 504 of the Rehabilitation Act in which a jury awarded the paraplegic plaintiff over $1 million in compensatory damages and $1.2 million in punitive damages. The district court vacated the punitive damage award, holding that such damages were unavailable under Title II and §504. The Eighth Circuit reversed. Principally relying on *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 70-71 (1992), which stated the "general rule" that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute," the Eighth Circuit reasoned that punitive damages were appropriate "because they are 'an integral part of the common law tradition and the judicial arsenal,'" and because "Congress did nothing to disturb this tradition in enacting or

amending the relevant statutes." *Barnes*, 536 U.S. at 184 (quoting *Gorman v. Easley*, 257 F.3d 738, 747 (8th Cir. 2001)).

The Supreme Court granted certiorari and reversed, holding that punitive damages were unavailable in a private action pursuant to Title II and the Rehabilitation Act. Writing for a six-judge majority, Justice Scalia noted that Congress had made the remedies for violations of Title II of the ADA and §504 of the Rehabilitation Act "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d *et seq.*, which prohibits racial discrimination in federally funded programs and activities." *Barnes*, 536 U.S. at 185. Title VI "invokes Congress's power under the Spending Clause," and the Supreme Court has "repeatedly characterized" such Spending-Clause legislation as "much in the nature of a *contract*," under which recipients of federal funds agree to comply with federally imposed conditions. *Id.* at 185-86 (emphasis in original). Justice Scalia applied that contract analogy in determining the scope of the damages available under Title II and §504, reasoning:

> [A] remedy is "appropriate relief" . . . only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature. A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract. But punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract, see 3 E. Farnsworth, Contracts §12.8, pp. 192–201 (2d ed.1998); Restatement (Second) of Contracts §355; 1 T. Sedgwick, Measure of Damages §370 (8th ed. 1891).

*Id.* at 187-88 (emphasis in original). Noting the potentially "disastrous" impact punitive damages might have on funding recipients and expressing doubts as to whether the recipients "would even have *accepted the funding* if punitive damages liability was a required condition," the *Barnes*

majority held that punitive damages were unavailable under Title VI, Title II of the ADA or the Rehabilitation Act. *Id.* at 188 (emphasis in original).

In arguing that Plaintiff should not be entitled to collect damages for emotional distress under Title II, Defendants urge this Court to extend the *Barnes* reasoning beyond punitive damages. Citing to treatises for the proposition that damages for "emotional distress," "mental suffering" and "pain and suffering" are generally unavailable in breach of contract actions, Defendants argue that "the considerations that the Supreme Court relied on in *Barnes* – using a 'breach of contract' model rather than, e.g., a 'tort' model to address the kinds of relief that may be awarded under the ADA's Title II and the [Rehabilitation Act]'s §504 – would make 'emotional distress' damages unavailable as relief to a prevailing private plaintiff under the ADA's Title II and the [Rehabilitation Act]'s §504." Defendants' Memo at 3-4. Defendants cite to two district court opinions – both authored by Judge James O. Browning of the District of New Mexico – which have adopted this analysis. *Id.* at 4. However, Defendants concede that other courts, including the Eleventh Circuit, have expressly rejected their argument, holding that damages for emotional distress are available for intentional violations of the Rehabilitation Act. *Id.* (citing *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1198-1204 (11th Cir. 2007).

In describing this conflict, Defendants do not cite to any Second Circuit cases. However, in her responsive papers, Plaintiff notes that the Second Circuit has expressly upheld at least one district court judgment awarding non-economic damages under Title II. *See* Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Memo") at 2, n.1. In *Tsombanidis v. City of West Haven*, 180 F. Supp. 2d 262 (D.Conn. 2001), the owner and residents of a group home for recovering alcoholics and drug addicts brought an action against the City of West Haven and others, alleging that the defendants'

application and enforcement of the City's zoning, building, and property maintenance codes and the State Fire Safety Code discriminated against persons with a disability or handicap in violation of the Fair Housing Act and Title II. After a bench trial, the district court held that the City had "acted with 'deliberate indifference' to the rights of plaintiffs under the ADA because of their status as disabled persons and that the City [was] liable for monetary damages as a result of this intentional discrimination." 180 F. Supp. 2d at 295. The district court further found that "there was sufficient evidence presented at trial concerning emotional distress suffered by Tsombanidis for the Court to hold that these injuries were proximately caused by the discriminatory conduct of the City," and that Tsombanidis was entitled to recover compensatory damages for this emotional pain and suffering. *Id.* Although the district court's judgment was subsequently reversed in part, the Second Circuit expressly "affirm[ed] the district court's award of compensatory damages . . . in its entirety. . . ." *Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 580-81 (2d Cir. 2003) (brackets added).

In their reply papers, Defendants argue that *Tsombanidis* should not be viewed as controlling. Defendants state, in pertinent part:

> [T]he Second Circuit's . . . decision gives *no* reasoning for its affirmance of the district court's award of compensatory damages, let alone even a hint of any consideration of the impact of *Barnes* in this area. There is thus no "binding precedent" from the Second Circuit as to the effect of *Barnes* and its contractual-analogy analysis on the availability of "emotional distress" damages under the ADA's Title II or the [Rehabilitation Act].

Defendants' Reply Supplemental Memorandum of Law in Support of their Motion for Summary Judgment ("Defendants' Reply") at 2 (brackets added). Defendants assert that this Court is "free to make its own determination as to whether the *Barnes* contract analogy developed by the Supreme Court (in an opinion that also *rejected* the tort analogy) to analyze the availability of

10

certain money damages under the ADA's Title II and the [Rehabilitation Act] calls for excluding those kinds of damages that are not available for breach of contract claims, and thus calls for excluding 'emotional distress' damages for Ms. Stamm." *Id.* (emphasis in original, brackets added).

To the extent that Defendants are contending that *Tsombanidis* is inconsistent with *Barnes*, this Court rejects that argument. Although five justices joined Justice Scalia's majority opinion in *Barnes*, two of those justices – Souter and O'Connor – made clear that their ruling was limited to the punitive damages context. In a concurring opinion in which Justice O'Connor joined, Justice Souter wrote:

> I join the Court's opinion because I agree that analogy to the common law of contract is appropriate in this instance, with the conclusion that punitive damages are not available under the statute. Punitive damages, as the Court points out, may range in orders of "indeterminate magnitude," . . . untethered to compensable harm, and would thus pose a concern that recipients of federal funding could not reasonably have anticipated. I realize, however, and read the Court's opinion as acknowledging, that the contract-law analogy may fail to give such helpfully clear answers to other questions that may be raised by actions for private recovery under Spending Clause legislation, such as the proper measure of compensatory damages.

*Barnes*, 536 U.S. at 190-91. Three other justices filed a separate concurring opinion, rejecting the contract analogy altogether and relying instead on *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), which held that, absent clear congressional intent to the contrary, municipalities are not subject to punitive damages. *Id.* at 191-93. Accordingly, this Court does not read *Barnes* as mandating, or even advocating, use of the contract-analogy approach in determining the permissible scope of compensatory damages.

Since *Tsombanidis* is not inconsistent with *Barnes*, and since there was no need for the Second Circuit to consider "the impact of *Barnes*" on claims for emotional distress arising from

11

Title II violations, this Court views *Tsombanidis* as controlling. Even if it were not, this Court is persuaded by the thorough analysis of the Eleventh Circuit in *Sheely*. This Court is unpersuaded by the reasoning of New Mexico District Judge Browning, which – as Judge Browning himself concedes – has been criticized by commentators. *See Bell v. Bd. of Educ. of Albuquerque Pub. Schs.*, 652 F. Supp. 2d 1211, 1212-13 (D.N.M. 2008) (acknowledging criticism in J. Lave, M. Sklar, and A. van der Zee, *A Right Without a Remedy: An Analysis of the Decisions by the District Court and Eleventh Circuit in Sheeley v. MRI Radiology Network, P.A., and the Implication for Disabled Americans' Ability to Receive Emotional Damages Under the Rehabilitation Act and the Americans With Disabilities Act*, 4 Seton Hall Circuit Rev. 1 (2007)). Accordingly, this Court holds that damages for emotional distress are available under Title II.

## *II. The Timeliness of Plaintiff's Title II and Rehabilitation Act Claims*

In their supplemental brief, Defendants also argue (1) that Plaintiff's Title II and Rehabilitation Act claims are time-barred to the extent that they arise from incidents that occurred prior to May 21, 2001, and (2) that Plaintiff's retaliation claim, arising from the NYCTA's refusal to permit her access to an empty articulated bus, is untimely. In the first of these two arguments, Defendants assert that claims under Title II and the Rehabilitation Act are subject to a three-year statute of limitations and, accordingly, that Plaintiff cannot recover for violations of those statutes that occurred more than three years prior to the commencement of this action in May 2004. Plaintiff does not dispute that a three-year statute of limitations is applicable, but argues that the "continuing violation" doctrine is applicable to this case.

Preliminarily, this Court notes that Congress did not establish a statute of limitations for Title II or Rehabilitation Act claims. *See Keitt v. City of New York*, — F. Supp. 2d —, No. 09 Civ. 8508 (GBD)(DF), 2011 WL 4526147, at *26 (S.D.N.Y. Sept. 29, 2011). In the absence of a

Congressionally established time limitation for a federal cause of action, "the settled practice [is] to adopt a local time limitation as federal law if it [is] not inconsistent with federal law or policy to do so." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78 (2004) (internal quotations and citation omitted; bracketed material added). Accordingly, Plaintiff's Title II and Rehabilitation Act claims are both governed by the three-year statute of limitations applicable to New York personal injury actions. *Keitt*, 2011 WL 4526147, at *26-*27.

"Federal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used." *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). "Under federal law, a claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis of the action." *Id.* (citing cases). "The continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). In cases alleging a continuing violation, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of [the continuing violation]." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (bracketed material added).

"[C]ourts in the Second Circuit have viewed continuing violation arguments with disfavor." *Bernstein v. The MONY Group, Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002). "[T]he continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination, and . . . acts so 'isolated in time . . . from each other . . . [or] from the timely allegations[ ] as to break the asserted continuum of discrimination' will not suffice." *Fitzgerald v. Henderson*, 251 F.3d at 359 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)) (brackets and elipses added in *Fitzgerald*). However,

13

"a continuing violation may be found 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).[1] "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell*, 23 F.3d at 704.

In this case, Plaintiff has adduced evidence which, if credited by a jury, might establish a continuing violation of the sort described in *Cornwell*: *i.e.*, specific and related instances of discrimination that were permitted to continue unremedied for so long as to amount to a discriminatory policy or practice. As discussed above, *see* pp. 6-7, *ante*, Plaintiff's Title II claim rests on allegations of numerous specific and related discriminatory incidents which allegedly occurred in contravention of the NYCTA's official written policy. Plaintiff claims that the NYCTA failed to effect adequate remedies, with the result that these incidents continued to occur repeatedly and regularly. According to Plaintiff, the failure of the NYCTA policymakers to stop the discriminatory practices is evidence of deliberate indifference on the part of those policymakers, and that "deliberate indifference to the strong likelihood [of] a violation" establishes the intentional violation of Title II. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d at 275.

---

[1] Both *Fitzgerald* and *Cornwell* preceded the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which limited the scope of the continuing violation doctrine. However, courts in this Circuit continue to cite to *Cornwell* and progeny for this proposition, finding that *Morgan* abrogated *Cornwell* on other grounds. *See, e.g., Gallo v. Glen Cove City Sch. Dist.*, No. 08-CV-3582 (JFB)(WDW), 2009 WL 1161818, at *5 (E.D.N.Y. Apr 29, 2009); *McPhee v. New York City Health & Hosps. Corp.*, No. 07 Civ. 1053 (PKC)(DCF), 2008 WL 3930089, at *4 (S.D.N.Y. Aug 25, 2008); *see also Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed.Appx. 413, 416-17 (2d Cir. 2011) (summary order).

In light of this evidence of a continuing violation, Plaintiff can bring suit for all conduct that was part of this violation. *See Cornwell*, 23 F.3d at 704. Accordingly, Plaintiff's action is not limited only to those incidents which occurred since May 21, 2001 – three years prior to the commencement of this action. Defendants' motion to dismiss the pre-May 2001 incidents as time-barred is, therefore, denied.

### *III. The Timeliness of Plaintiff's Retaliation Claim*

In contrast, Defendant's motion to dismiss Count Seven of the Second Amended Complaint, which alleges that Defendants retaliated against Plaintiff by refusing to permit her private access to an empty articulated bus, is granted. The statute of limitations for filing a retaliation claim under the ADA is three years. *See Harris v. S. Huntington Sch. Dist.*, No. 06-CV-3879 (DGT), 2009 WL 875538, at *9 (E.D.N.Y. Mar. 30, 2009). For statute of limitations purposes, the clock begins to run when the retaliatory action occurs. *Id.* According to a July 19, 2004, e-mail attached as Exhibit EE to the Affidavit of Bruce J. Turkle, Esq., in Opposition to Defendants' Motion for Summary Judgment (the "Turkle Affidavit"), the allegedly retaliatory action occurred on July 19, 2004, when Defendants informed Plaintiff that they were denying her request for access to an articulated bus. However, Plaintiff did not amend her pleadings to add this retaliation claim until January 23, 2008 – more than three and one-half years later.

In opposition to Defendants' argument, Plaintiff advances three responses. First, Plaintiff argues that the July 19, 2004, e-mail contains inadmissible hearsay, which cannot serve to establish when Plaintiff received notice that her request for an articulated bus was denied. Second, Plaintiff argues that the allegedly retaliatory conduct relates back to the original pleading. Third, Plaintiff asserts that the articulated bus incident is a part of a continuing pattern of retaliatory activity.

15

To resolve the hearsay issue raised in Plaintiff's first argument, this Court must first place the July 19, 2004, e-mail in context. This e-mail was the last of a series of e-mail exchanges between Defendants' employees regarding how to respond to Plaintiff's request for access to an empty articulated bus. The e-mail exchanges began on Tuesday, July 13, 2004, the day after Plaintiff communicated her request during a telephone conversation with one Michael Levy. Turkle Aff., Ex. EE, at D00639. After several e-mails between employees, the request was denied by one Christopher Lake, a Department of Buses employee who informed Levy in a July 16, 2004, e-mail, "This is not something that we have ever done before and we cannot take on this additional responsibility." *Id.* at D00010. After an e-mail exchange between Lake and Levy regarding who should contact Plaintiff with this determination, Levy informed his colleagues:

> I left a message for Ms. Stamm at 9:30 AM today 7-19-04,
> informing her that the Department of Buses could not provide the
> training she requested. I referred her to DOB Customer Relations
> if she had further questions.

*Id.*

In their reply papers, Defendants do not deny that the July 19, 2004, e-mail is hearsay. Defendants maintain, however, that this and the other e-mails are "obviously . . . records maintained by NYCTA in the ordinary course of business." Defendants' Reply at 6. While Defendants may not have provided sufficient evidence to establish that these e-mails were records "kept in the course of regularly conducted activity" and made as part of "the regular practice of that activity," *see* Fed. R. Evid. 803(6)(B) and (C), this Court finds that the July 19, 2004, e-mail is admissible under Fed. R. Civ. P. 807. Since Levy was attempting to be precise and knew his co-workers would rely on his statements, there are circumstantial guarantees of trustworthiness equivalent to those underlying the business records exception. Moreover, this

16

evidence is more probative on the material issue of when Levy notified Plaintiff of the denial than any other evidence that Defendants were able to obtain. Accordingly, admitting this evidence would "best serve the purposes of [the Federal Rules of Evidence] and the interests of justice." Fed. R. Evid. 807(a)(4).

Plaintiff's second argument asserts that the retaliation claim alleged in Count Seven of the Second Amended Complaint relates back to conduct alleged in the original complaint. Rule 15(c) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading . . . ." Rule 15(c)'s rationale is "that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Rubin v. Valicenti Advisory Services, Inc.*, 471 F. Supp. 2d 329, 337 (W.D.N.Y. 2007) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n. 3 (1984)). However, the retaliation claim set forth in Count Seven of the Second Amended Complaint arises from an incident which occurred after the original and first amended complaints were drafted, and nothing in those prior pleadings provided Defendants with notice of the retaliation claim at issue. Accordingly, the retaliation claim does not relate back to the prior pleadings.

In her third argument, Plaintiff again invokes the continuing violation doctrine, asserting that "the 'articulated bus' issue is part of a continuing pattern of retaliatory acts," some of which "occurred within three years of the filing of the Second Amended Complaint." Plaintiff's Memo at 19. However, the "articulated bus" incident and the two subsequent acts of alleged retaliation identified by Plaintiff – namely, failures to comply adequately with a Freedom of Information

Law request made in 2005 and a refusal to provide Plaintiff with a list of stations accessible only by High Entrance/Exit Turnstiles in 2006 – are discrete acts, related only by Plaintiff's claim that they are retaliatory. Discrete acts "which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012). Accordingly, the retaliation claim alleged in Count Seven of the Second Amended Complaint is dismissed as time-barred.[2]

## *CONCLUSION*

For the reasons set forth above, Defendants' motions with respect to Title II of the ADA are denied in their entirety. Defendants' motion to dismiss the retaliation claim set forth in Count Seven of Plaintiff's Second Amended Complaint is granted. In accordance with Section IV of this Court's Individual Motion Practices & Rules, *see* https://www.nyed.uscourts.gov/pub/rules/SLT-MLR.pdf, the parties shall contact the Court within thirty (30) days of the date of this Memorandum and Order to request a date for a pre-trial scheduling conference.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated: January 18, 2013
Brooklyn, New York

---

[2] In light of this conclusion, there is no need to address Defendants' argument that the retaliation claim should be dismissed for lack of evidence.